# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Olena Kalichenko,                                       Civ. No. 20-1646 (WMW/BRT)

                Plaintiff,

v.

Nanette Barnes, Former Warden FCI          **REPORT AND**
Waseca; Honken, Chaplain FCI Waseca;        **RECOMMENDATION**
SIS Department, FCI Waseca; DOJ
Washington; M. Starr, Warden; FCI
Waseca,

                Defendants.

Olena Kalichenko, *pro se* Plaintiff.

Kristen Elise Rau, Esq., United States Attorney's Office, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

      This matter is before the Court on Defendants' Motion to Dismiss or, in the

alternative, for Summary Judgment. (Doc. No. 50.) Plaintiff's original Complaint was

filed on July 28, 2020. (Doc. No. 1.) Several months later, Plaintiff filed a letter, which

the Court construed as a motion to amend and a motion to appoint counsel. (Doc.

Nos. 34, 35.) The Court granted Plaintiff's motion to amend, stating: "Plaintiff should

ensure that her amended pleading is complete in itself and does not incorporate by

reference her prior pleading." (Doc. No. 37.)[1] Plaintiff's Amended Complaint was filed

on February 18, 2021. (Doc. No. 39, Am. Compl.) Plaintiff separately filed an

"attachment" to her Amended Complaint setting forth her "Request for Relief." (Doc.

No. 42.)[2] Plaintiff opposes Defendants' motion.[3] For the reasons set forth below, this

Court recommends that Defendants' motion for summary judgment be granted, and this

action be dismissed without prejudice for failure to exhaust administrative remedies.

## I.    PLAINTIFF'S ALLEGATIONS

Plaintiff has been in federal custody at the Federal Correctional Institution in

Waseca ("FCI Waseca"). Plaintiff alleges that Warden M. Starr violated Plaintiff's

---

[1]    Plaintiff's motion to appoint counsel was denied without prejudice. (Doc. No. 37 at 2.)

[2]    Typically, the allegations raised in the latest amended pleading become the operative pleading. *See*, *e.g.*, *Ricketts v. Maggard*, No. 19-cv-0276 (WMW/HB), 2019 WL 3543859, at *2 (D. Minn. Aug. 5, 2019) (concluding that a pro se inmate's "original complaint" was "no longer the operative pleading" where the inmate had filed an amended complaint). Sometimes, when a pro se party's amended pleading clearly intends to incorporate the claims alleged in the original complaint, courts liberally read the two pleadings together. *See*, *e.g.*, *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1029 n.2 (D. Minn. 2010). Plaintiff's Amended Complaint, however, does not clearly intend to incorporate the claims alleged in the original Complaint. In fact, Plaintiff appears to have followed this Court's Order granting her motion to amend. (*See* Doc. No. 37 ("Pursuant to Local Rule 15.1(a), Plaintiff should ensure that her amended complaint is complete in itself and does not incorporate by reference her prior pleading.").) Thus, because the record indicates that Plaintiff did not intend to have this Court read her two Complaints together, this Court considers Plaintiff's Amended Complaint with the "Request for Relief" attachment as the singular operative Complaint. (Doc. Nos. 39, 42.)

[3]    After Defendants' motion was filed, Plaintiff submitted a letter on June 1, 2021, seeking permission to respond. (Doc. No. 61.) In a text entry Order, dated June 3, 2021, this Court construed Plaintiff's letter as a request to respond to Defendants' Motion to Dismiss. (Doc. No. 63.) Plaintiff responded to the Motion to Dismiss on June 30, 2021. (Doc. No. 65.) Plaintiff filed another letter on October 7, 2021. (Doc. No. 69.)

constitutional rights in her "direct involvement in mismanagement of COVID-19 in Waseca," delayed or denied access to medical care, restricted access to items purchased from the commissary, and authorized use of excessive force relating to a January 19, 2021 medical assessment. (*See generally* Am. Compl.) These allegations indicate that Plaintiff's claims against Warden M. Starr fall under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[4] Plaintiff also asserts that FCI Waseca violated her Eighth Amendment rights in various ways,[5] including failing to

---

[4]    "[A] Bivens action is the federal analog to suit brought against state officials under 42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006).

[5]    This Court has construed the Amended Complaint to assert claims under the Eighth Amendment. That said, this Court notes that Plaintiff attached a Standard Form 95 ("Claim for Damage, Injury, or Death") to her Amended Complaint, which was executed on November 3, 2020 and alleged the following: "Irreparable harm caused to my health by deliberate actions of FBOP and Waseca staff by contaminating me with COVID-19." (Doc. No 39-1 at 12.) Standard Form 95 is the prescribed form for presenting claims under the Federal Tort Claims Act ("FTCA"). *See* 28 C.F.R. § 14.2(a) ("For purposes of the provisions of [Title] 28 U.S.C. §§ 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident . . . ."). In order to maintain a lawsuit against the United States under the FTCA, a plaintiff must present notice of his or her claim to the appropriate federal agency. 28 U.S.C. § 2675(a). Once the claim has been denied or the agency has not made a final disposition of the claim within six months (such that the plaintiff may deem her claim denied), a plaintiff may bring a lawsuit in federal court. *Id.* Plaintiff has not demonstrated that she presented this form to the Federal Bureau of Prisons ("BOP"). Even if she had, there is no evidence that Plaintiff received the required denial. And even if no denial was made, Plaintiff did not wait six months before bringing this action (only less than four months passed between November 3, 2020 when Plaintiff executed the Standard Form 95 and February 18, 2021, when she filed her Amended Complaint). Therefore, even if Plaintiff's claims regarding COVID-19 are construed as claims for negligence arising under the FTCA, this Court lacks subject matter jurisdiction under § 2675(a). *See Pinson v. Hadaway*, No. 18-CV-3420-NEB-KMM, 2020 WL 6121357, at *5 (D. Minn. July 13, 2020), *report and recommendation adopted*, No. 18-CV-3420 (NEB/KMM), 2020 WL 5543749 (D. Minn. Sept. 16, 2020) ("When a plaintiff has failed

protect her from COVID-19, delaying or denying medical care once she was infected, putting her at risk of reinfection by continued transfer of inmates infected with COVID-19, and failure to provide a proper mask. (Am. Compl. 3–16.)[6] In addition, Plaintiff claims that she was injured in the calculated use of force by staff during the January 19, 2021 medical assessment. (*Id.* at 2.) Further, Plaintiff claims that she was deprived of the ability to communicate with her attorney and family, denied warm clothing and certain property, and restricted in her ability to purchase items from the commissary. (*Id.* at 7–9.) Finally, Plaintiff claims that her constitutional rights were violated by FCI Waseca when she was threatened with discipline that would deprive her of a mattress in the Special Housing Unit ("SHU"). (*Id.* at 2.) In her Request for Relief, Plaintiff seeks (1) transfer of custody to the government of Ukraine, (2) monetary compensation in the amount of $450,000, (3) release of the videorecording of the January 19, 2021 incident,[7] and (4) a temporary restraining order "against the Administration of the facility." (Doc. No. 42.)

---

to comply with the requirements of § 2675(a), the suit must be dismissed for lack of subject matter jurisdiction.").

[6]     In her Amended Complaint, Plaintiff claims that the Moderna vaccine has not been offered to her. (Am. Compl. 16.) Medical records indicate that Plaintiff refused the Moderna COVID-19 vaccine on April 7, 2021. (Lindner Decl. ¶ 9.) In her Response, Plaintiff states that she has since requested the vaccine, but claims that the vaccine "is under researched" and may not protect against new variants because the "virus by itself is constantly mutating." (Doc. No. 65 at 9.)

[7]     Plaintiff's Amended Complaint incorporated an earlier letter request she made for a copy of the video. (Doc. No. 38.)

## II.    BACKGROUND FACTS

### A.    COVID-19 Infections at FCI Waseca

In August 2020, Warden M. Starr (the then-warden of FCI Waseca) accepted a transfer of new inmates into FCI Waseca from the Grady County Jail where Plaintiff is serving her sentence. (Am. Compl. 3–5; Doc. No. 57, Decl. of Mistelle (Misty) Starr ("Starr Decl.") ¶¶ 10–11.) After the transfer, FCI Waseca "experienced a surge in positive COVID-19 inmate cases." (Starr Decl. ¶ 11.) Plaintiff alleges that cases of COVID-19 had been reported at the Grady County Jail, but despite those reports, Warden M. Starr transferred the inmates to FCI Waseca. (Am. Compl. 3–5.) According to Plaintiff, Warden M. Starr moved six women who had tested positive for COVID-19 into her housing unit "despite still being sick." (*Id.* at 5–6.) The transfer, Plaintiff contends, caused a contamination of the inmates within her housing unit, which prompted FCI Waseca staff to place her, along with other inmates, in a gym where Plaintiff alleges she was exposed to unreasonable conditions, including (1) being "forced to sleep on military beds in a huge space that provided absolutely zero isolation," (2) being constrained to "1 shower that was available for all of us," (3) given no access to either phone or email, (4) not provided with any medication, and (5) having her warm clothing "confiscated." (*Id.* at 6–7, 9.)

Plaintiff claims that as of September 14, 2020, half of her unit was already positive with COVID-19 and FCI Waseca staff began to remove people out of the unit to the gym. (*Id.* at 6.) Medical staff started to test inmates. (*Id.*) Plaintiff initially tested negative. (*Id.*)

After a few days in the gym, she was placed in a different unit. (*Id.*) But on September 24, 2020, Plaintiff tested positive for COVID-19. (Am. Compl. 8–9; Doc. No. 54, Decl. of Dr. Linda Lindner ("Lindner Decl.") ¶ 5.) After that, she was placed in isolation status. (*Id.* at 8.)

In her Amended Complaint, Plaintiff states that she started getting COVID-19 related symptoms on September 21, 2021. (*Id.* at 8.) According to her medical records, Plaintiff's symptoms included a runny nose, sinus congestion, headache, persistent pain in her chest, shortness of breath, and muscle aches. (Lindner Decl. ¶ 5, Ex. A at 87–100.) On October 4, 2020, health services considered her "recovered." (Doc. No. 56, Declaration of Shannon Boldt ("Boldt Decl."), Ex. C.) According to Plaintiff's Amended Complaint, she was moved back into her housing unit. (Am. Compl. 11.) Plaintiff complains that her condition worsened "due to higher concentration of virus" inside her unit "because there were more women there then (sic) in the gym and it was much harder for" her "immunity to fight" the virus. (Am. Compl. 10.) A medical record, dated October 7, 2020, indicates "Acute bronchitis, unspecified. Confirmed case COVID-19." (Lindner Decl., Ex. A at 86.) Plaintiff was prescribed an abuterol inhaler, an albuterol nebulizer, and a prednisone taper. (Lindner Decl. ¶ 6.) According to Plaintiff, the steroids did not help, although medical records indicate that Plaintiff was not compliant with her medication. (Lindner Decl. ¶¶ 7–8.)

Plaintiff "filed a sick call" on October 16 that was not answered until October 23, 2020. (Am. Compl. 10.) Medical records dated October 23 note that Plaintiff's COVID-19 infection had resolved, but Plaintiff appeared upset: "she has been resolved on the

6

chart, but is still having COVID symptoms." (Lindner Decl., Ex. A at 80.) Plaintiff was

instructed to start using her inhaler to see if it would relieve some of her issues. (*Id.*)

Plaintiff filed another "sick call" on October 30 stating that she was "still experiencing"

symptoms and that her inhaler did not help alleviate her shortness of breath. (Am. Compl.

10.) Plaintiff reported chest tightness with shortness of breath on November 2, 2020.

(Lindner Decl., Ex. A at 76.) According to the medical records, Plaintiff stated that she

was not using her inhaler and was encouraged to do so to help relieve the shortness of

breath. (*Id.*)

### B.    January 19, 2021 Medical Assessment

In January 2021, Plaintiff was placed in the SHU after a custodial violation.

(Lindner Decl., Ex. A at 73.) In the same month, Plaintiff participated in a hunger strike.

(Lindner Decl. ¶ 10.) After being monitored for several days, medical staff asked Plaintiff

at the door of her cell to undergo a medical assessment to assess her vitals. (*Id.*, Ex. A at

50–72.) Plaintiff did not respond. (*Id.*, Ex. A at 50.) According to Defendants, Plaintiff

also refused to submit to the assessment. (*Id.* at ¶ 10.) Warden M. Starr then authorized a

"calculated use of force" to help medical staff obtain their assessment of Plaintiff's

condition.[8] (*Id.*, Ex. A at 43–47.) On January 19, 2021, a group of officers opened

Plaintiff's cell door and, according to Plaintiff, placed cuffs on her legs and wrists, a

---

[8]    Defendants define a "calculated use of force" as a "formalized team technique used to control an inmate where other efforts to resolve a situation have failed or are ineffective to protect inmate safety, prevent serious property damage, and ensure institutional safety and good order, utilized when an inmate is in an area that can be isolated and when there is no immediate, direct threat to the inmate or others." (Doc. No. 51, Defs.' Mem. 3 n.1.)

chain around her waist, and physically removed her from the cell and onto a wheelchair where staff members held her down. (Am. Compl. 2.) Plaintiff alleges that a nurse tried but failed to draw her blood three times because her circulation was blocked by the cuffs. (*Id.*) A staff member, she continues, then "broosted (sic) my entire right wrist with the cuffs and caused me unbearable pain." (*Id.*) Defendants state that a nurse documented Plaintiff's complaint that the restraints were too tight but determined that the restraints were "applied correctly at the wrists and ankles." (Lindner Decl. ¶ 10.)

### C.    Infractions and Discipline

Plaintiff was disciplined relating to incident reports occurring in January 2021. (Am. Compl. 2; Doc. No. 53, Decl. of Deanna Hiller ("Hiller Decl.") ¶ 8.) Plaintiff was sanctioned for "Refusing to Work or Accept a Program Assignment" in "violation of Code 306." (Hiller Decl. ¶ 11.) Plaintiff was sanctioned to a 30-day loss of a mattress from 8:00 a.m. to 8:00 p.m., if she should return to the SHU. (Am. Compl. 2; Hiller Decl. ¶¶ 11–12, Ex. C at 2.) The sanction, however, "was suspended pending 180 days clear conduct." (Bolt Decl., Ex. F.) Plaintiff was also found guilty of "Refusing to Stand for Count" in "violation of Code 320," and sanctioned with 60 days of impoundment of personal property. (Hiller Decl. ¶ 9.) While FCI Waseca provides cold weather clothing for inmates, many inmates choose to purchase their own personal clothing. When Plaintiff's personal property was impounded, Plaintiff still kept all clothing, including cold weather clothing, issued by the institution. (Hiller Decl. ¶¶ 8–10.)

### III.    ANALYSIS

Defendants argue that this Court should dismiss Plaintiff's Amended Complaint or, in the alternative, grant Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 50.) Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, asserting several grounds for dismissal, including Plaintiff's failure to exhaust her administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e. (Defs.' Mem. 8–11.)

In general, it is inappropriate to dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) when raising a failure to exhaust available administrative remedies. *See Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007) ("Under the [PLRA], failure to exhaust the available administrative remedies is . . . not a matter of subject matter jurisdiction."). Thus, this Court considers whether a conversion from a Rule 12(b)(6) motion to a Rule 56 is appropriate.

A motion to dismiss argued under Rule 12(b)(6) must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court . . . ." Fed. R. Civ. P. 12(d). Matters outside the pleadings include "'any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings.'" *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366). Here, because Defendants present evidence outside the pleadings for support, and Plaintiff presents evidence attached to her Amended Complaint for support,

this Court treats Defendants' motion to dismiss as a motion for summary judgment under

Rule 56. *See*, *e.g.*, *Gibb*, 958 F.2d at 816.[9]

### A.    Standard of Review

Summary judgment is appropriate if, "after viewing the evidence and drawing all

reasonable inferences in the light most favorable to the nonmovant, no genuine issues of

material fact exist, and the movant is entitled to judgment as a matter of law." *Johnson v.

Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quotation omitted). In ruling on a motion for

summary judgment, "[t]he evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor," because "[c]redibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). A disputed fact is material when its resolution "might affect the outcome of the

---

[9]    When matters outside the pleadings are considered—and a motion to dismiss is
converted to a motion for summary judgment—courts are generally required to give the
parties notice of the change of status. *See*, *e.g.*, *Court v. Hall Cnty., Neb.*, 725 F.2d 1170,
1172 (8th Cir. 1984) (stating that "[o]nce the district court decided not to exclude the
extrinsic material, however, it was essential that the court give the parties notice of the
changed status of the motion"). Plaintiff had adequate notice that Defendants' motion
would be treated as a summary-judgment motion because Defendants designated their
motion as a summary-judgment motion and submitted additional evidence in the form of
Declarations and exhibits. Plaintiff's response recognizes this. Plaintiff herself submitted
materials outside the pleadings. *See Hearing v. Minn. Life Ins. Co.*, 793 F.3d 888, 893
(8th Cir. 2015) ("Where the movant designates its motion to dismiss alternatively as a
motion for summary judgment, and the nonmovant submits materials outside the
pleadings, a district court is not required to give formal notice that it will treat a motion as
one for summary judgment.").

suit under the governing law," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001) (quotations omitted). If it does so, the non-moving party may not rest on mere allegations or denials but must point to evidence of "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see also* Fed. R. Civ. P. 56(c)(1). Conclusory assertions, standing alone, are not enough to create a genuine issue of material fact. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011). Where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

When deciding a summary-judgment motion, courts liberally construe pro se pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, a pro se plaintiff's claims cannot survive a summary-judgment motion unless she has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Arguments and statements in briefing are not evidence and cannot create issues of fact for purposes of summary judgment. *See Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 467 n.6 (8th Cir. 2002).

11

### B.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before bringing a suit regarding prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). A suit regarding prison conditions includes both claims about "general circumstances" of confinement and claims regarding "particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Administrative exhaustion is required regardless of the nature of the relief the prisoner seeks. *Porter*, 534 U.S. at 532 ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life . . . whether they allege excessive force or some other wrong."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Abdulaziz/Askew v. Payne*, No. 4:20-CV-529-JM-BD, 2021 WL 1745514, at *1–2 (E.D. Ark. Apr. 20, 2021) (dismissing inmate's claims related to COVID-19 for failure to exhaust his administrative remedies), *report and recommendation adopted*, No. 4:20-CV-529-JM-BD, 2021 WL 1740081 (E.D. Ark. May 3, 2021).

The PLRA does not specify an exhaustion procedure; for a prisoner's claims to be considered administratively exhausted, the prisoner must follow the grievance procedure of the facility where they are incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Federal Bureau of Prisons ("BOP") has a four-step administrative remedy procedure. 28 C.F.R. §§ 542.10–.19. First, a prisoner must bring the issue to a staff member, who

should attempt to informally resolve the issue. 28 C.F.R. § 542.13(a). Second, if the issue is not informally resolved, the prisoner must submit an Administrative Remedy Request. *Id.* § 542.14. If the warden denies the Administrative Remedy Request, the prisoner must, third, appeal the denial to the BOP's Regional Director. *Id.* § 542.15(a). Fourth and finally, if that appeal is denied, the prisoner must appeal again, this time to the BOP's General Counsel. *Id.* Thus, under the BOP's administrative remedy procedure, a claim is not fully exhausted until the BOP's General Counsel has denied it. *See id.* ("Appeal to the General Counsel is the final administrative appeal.").

The PLRA contains no exceptions to its requirement that prisoners administratively exhaust their remedies. *Ross v. Blake*, 578 U.S. 632, 637–40 (2016). There are, however, certain circumstances where administrative exhaustion procedures may not be "available" for purposes of the PLRA. *Id.* at 640–46. These circumstances include: (1) when the procedure would be a "dead end" because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become "incapable of use"; and (3) when prison officials prevent a prisoner from utilizing the procedure through "machination, misrepresentation, or intimidation." *Id.* at 642–46.

Plaintiff filed or attempted to file a number of Administrative Remedy Requests related to the allegations in her Amended Complaint. (Boldt Decl. ¶ 12, Ex. A.)

13

### 1.    October 16, 2020 Request

In a Request for Administrative Remedy 1052876-F1, dated October 16, 2020,[10] Plaintiff complained about delay or access to medical care and increasing COVID-19 symptoms. (Boldt Decl., Ex. B at 2.) Warden M. Starr responded to Administrative Remedy Request 1052876-F1 on November 3, 2020, explaining that Plaintiff had been instructed to use her inhaler and purchase medications for pain as needed. (Boldt Decl., Ex. B. at 1.) Plaintiff was notified that if she was dissatisfied with the response, she could file an appeal with the North Central Regional Director within twenty days. (*Id.*) Plaintiff appealed the Warden's response to Administrative Remedy Request 1052876-F1 to the Regional Director. In her appeal, Plaintiff explained that she was "still experiencing same symptoms," that her medical treatment had been delayed, that she had used the inhaler and "it didn't help me," and that she had no money to purchase medications. (Boldt Decl. ¶ 14, Ex. A at 10, Ex. C at 2.) Regional Director Barb von Blanckensee responded, stating that Plaintiff had available funds to purchase medication and that she had been provided timely and appropriate medical care. (Boldt Decl. ¶ 14, Ex. C at 1.)[11] Blanckensee's Response gave Plaintiff notice that if she was dissatisfied with the response, she could "appeal to the Office of General Counsel, Federal Bureau of Prisons,

---

[10]    The Request is dated October 16, 2021. In her Declaration, Boldt states that Plaintiff submitted Administrative Remedy Request 1052876-F1 on October 18, 2020; the Administrative Remedy Generalized Retrieval record at Exhibit A shows it was received a day later on October 19, 2020. (Boldt Decl. ¶ 13, Ex. A at 9.)

[11]    Plaintiff acknowledges that she received this letter on January 25, 2021. (Am. Compl. 11.)

320 First Street, NW, Washington, DC 20534." (Boldt Decl., Ex. C at 1.) It also noted

that Plaintiff had thirty days from the date of the response to appeal. (*Id.*) Plaintiff did not

further appeal to the General Counsel in the Central Office. Thus, for this Request,

Plaintiff did not exhaust the fourth step of the BOP's administrative remedy procedure.[12]

### 2.    Three Requests Dated February 3, 2021

Plaintiff filed three Administrative Remedy Requests to appeal discipline received

for various incidents: (1) February 3, 2021 Administrative Remedy Request 1067599-F1,

appealing discipline received for Incident Report No. 3466433 (Boldt Decl. ¶ 15, Ex. A at

11, Ex. D at 2); (2) February 3, 2021 Administrative Remedy Request 1067601-F1,

appealing discipline she received for Incident Report No. 3466594 (Boldt Decl. ¶ 16, Ex.

A at 11, Ex. E at 2); and (3) February 3, 2021 Administrative Remedy Request 1067603-

F1, appealing the discipline she received for Incident Report No. 3466160. (Boldt Decl. ¶

17, Ex. A at 12, Ex. F at 2.) Plaintiff complained about discipline she had received for

incident reports, including that she had been "sanctioned" with a "mattress restriction" if

she should return to the SHU. (Boldt Decl. ¶¶ 16–17, Ex. A at 11–12, Exs. D at 2, E at 2,

F at 2.) Warden M. Starr responded to all three, saying that the discipline she had

received was appropriate. (Boldt Decl. ¶¶ 15–17, Exs. D–F.) Plaintiff did not appeal the

responses to Administrative Remedy Requests 1067599-F1, 1067601-F1, and 1067603-

---

[12]    Meanwhile, Administrative Remedy Request 1054308-F1 was denied because it
repeated the same requests in Administrative Remedy Request 1052876-F1. (Boldt Decl.
¶ 13 n.2, Ex. A at 10.) The denial was not appealed to the Warden. Thus, Plaintiff does
not exhaust the second, third, and fourth steps of the BOP's administrative remedy
procedure as to Administrative Remedy Request 1054308-F1.

F1. (Boldt Decl. ¶¶ 15–17.) Thus, Plaintiff did not exhaust her administrative remedies after step one.

### 3.    February 2, 2021 Regional Administrative Remedy Appeal

Plaintiff attached to her Amended Complaint a February 2, 2021 "Regional Administrative Remedy Appeal" relating to the January 2021 "calculated use of force" and her mattress sanction. (Doc. No. 39-1 at 1.) Defendants' Exhibit A to Boldt's Declaration of Plaintiff's Administrative Remedy Generalized Retrieval does not indicate that the document was submitted through the BOP's remedy procedure or followed an initial request to the Warden or denial. (Boldt Decl., Ex. A.) Even if it was, the record does not demonstrate that a decision on her appeal to the Regional Director was appealed to the General Counsel in the Central Office. Thus, based on the record presented to this Court, this Court concludes that Plaintiff did not exhaust her attached administrative remedy at any step.

### 4.    February 11, 2021 Request

Finally, on February 11, 2021, Plaintiff filed Administrative Remedy Request 10704360-R1, alleging staff misconduct. But Plaintiff improperly directed her Request to the Regional Director. (Boldt Decl. ¶ 18, Ex. A at 12.) This Request "was procedurally rejected" and Plaintiff was directed to "resubmit her request to the Warden"; Plaintiff was provided ten days to do so, which Plaintiff did not do. (Boldt Decl. ¶ 18.) Thus, Plaintiff did not exhaust her administrative remedies at any step.

For any other claims, Plaintiff did not file an Administrative Remedy Request with the Warden to address those grievances as part of the required steps of the BOP's

administrative procedure. And Plaintiff has not disputed Defendants' arguments about her failure to exhaust her administrative remedies in her responsive filings. Thus, viewing the allegations in the light most favorable to her, this Court concludes that Plaintiff has not exhausted the administrative remedy process with respect to any claim.

### 5.    Plaintiff Has Not Alleged That the BOP's Administrative Remedy Procedures Were Unavailable

Since Defendants have carried their burden to show that Plaintiff did not exhaust her administrative remedies, Plaintiff must show that remedies were unavailable to her so that she is excepted from the PLRA's requirements that prisoners administratively exhaust their remedies. *Ross*, 578 U.S. at 638, 642. As discussed above, there are certain circumstances where administrative exhaustion procedures may not be "available" for purposes of the PLRA. *Id.* at 640–46. These circumstances include: (1) when the procedure would be a "dead end" because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become "incapable of use"; and (3) when prison officials prevent a prisoner from utilizing the procedure through "machination, misrepresentation, or intimidation." *Id.* at 642–46. Plaintiff has not alleged that administrative remedy procedures were unavailable for any of these three reasons.

Defendants have met their burden to show that Plaintiff had administrative remedies available and failed to exhaust them. While this Court is sympathetic to the risks of COVID-19, those risks do not alter the mandatory requirements of the PLRA. The PLRA thus bars her Eighth Amendment claims and this Court recommends that

Defendants' motion for summary judgment be granted and that this action be dismissed without prejudice. [13], [14]

### C.    Request for Temporary Restraining Order

In her Request for Relief, Plaintiff asks for a temporary restraining order "against the Administration of the facility due to the fear of retaliation against me because of the suit." (Doc. No. 42.) However, because this Court recommends that Plaintiff's Amended Complaint should be dismissed, this Court also recommends that Plaintiff's requested

---

[13]    As noted, dismissal without prejudice is recommended. *See Schuett v. LaRiva*, No. 15-CV-4207 (WMW/SER), 2016 WL 11198353, at *6 & n.8 (D. Minn. Nov. 3, 2016) (dismissal without prejudice is appropriate even when a motion to dismiss for failure to exhaust is converted to a motion for summary judgment and collecting cases), *report and recommendation adopted as modified*, 2017 WL 123427 (D. Minn. Jan. 12, 2017), *aff'd*, 697 F. App'x 475 (8th Cir. 2017). This Court observes, however, that the administrative appeal deadlines on Plaintiff's claims may have expired. *See* 28 C.F.R. §§ 542.14(a) & .15(a). If that is the case, future attempts at exhaustion might be futile. Based on the limited record, however, the Court cannot conclude that attempts would almost *certainly* be futile. *See*, *e.g.*, *Patterson v. Casalenda*, No. 18-cv-2081 (NEB/SER), 2019 WL 2270609, at *4 (D. Minn. Apr. 23, 2019) (concluding that dismissal *with* prejudice is warranted where "any future attempts at exhaustion would almost certainly be futile.").

[14]    Because this Court recommends that summary judgment in favor of Defendants be granted due to Plaintiff's failure to exhaust her administrative remedies, this Court does not address other arguments raised by Defendants. *See Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (holding an inmate "must first have exhausted his administrative remedies pursuant to the grievance procedure of the prison before his civil rights complaint could proceed"); *Saldana v. Crane*, No. 12-cv-573 (DWF/TNL), 2013 WL 4747961, at *13 (D. Minn. Sept. 4, 2013) ("Because Saldana has not exhausted his administrative remedies regarding these claims, this Court will not proceed to a discussion of their merits."); *see Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory."); *Barbee v. Corr. Med. Servs.*, 394 F. App'x 337, 338 (8th Cir. 2010) (holding that "the district court should not have reached the merits of [the prisoner's] claims" where the defendants raised a nonexhaustion defense and the record supported that defense).

relief for a temporary restraining order as set forth in her Request for Relief be denied as well.

## RECOMMENDATION

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. No. 50) be **GRANTED**;

2.    This action be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995; and

3.    Plaintiff's request for a temporary restraining order in her Request for Relief (Doc. No. 42) be **DENIED**.

Dated: December 7, 2021                    *s/ Becky R. Thorson*
                                                              BECKY R. THORSON
                                                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).